The next case today is United States v. Alejandro Carrion-Melendez, appeal number 19-1815. Attorney Carrion, please introduce yourself for the record and proceed with your argument. Good morning, your honors. My name is Samuel Carrion and I represent the appellant Alejandro Carrion-Melendez. With the court's permission, I'd like to reserve two minutes. Thank you. Mr. Carrion had a right to be sentenced based on reliable information. That right was not honored in the district court. This appeal is about a four-point enhancement which effectively increased Mr. Carrion's guideline range 30 to 37 months based on unreliable, inaccurate, and deficient information. First, the district court wrongly sustained a finding by U.S. probation that Carrion was an armed enforcer for a drug gang at the public housing project in which he lived his entire life. This finding was based on unreliable information, namely unidentified and uncorroborated sources from state law enforcement, and those allegations first appeared in July 2017 in a state probation revocation proceeding, which was over nine months before Mr. Carrion's arrest in this case. Now at sentencing, the government played a video of Mr. Carrion a few days before his arrest in this case, talking to armed people at the PHP, at the public housing project where he lived. But where the government might argue that this is a smoking gun, it was more of a smoke screen because in the video, Mr. Carrion- Counselor, I'd like to share with you a perception I have of how the sentencing played out. You should tell me if I may have it wrong. It appears to me that the district court had made a decision before the sentencing began on this four-point enhancement. It says, in fact, it says that it did. And in the material that was presented to the district court before sentencing, the government does not seem to rely at all upon this armed enforcer reference in the Commonwealth probation report. It is in the report, that's true. The government does not urge that aspect of the probation report in arguing for the four-point enhancement. And so it appears to me that at sentencing, the armed enforcer issue comes up when the judge makes his final sentencing determination, but it doesn't seem to have played any role in the enhancement determination at all, which is the focus of your argument. So is that an inaccurate perception of how the sentencing played out? Well, your honor, I think it tells part of the story because the initial PSR did not include the four-point enhancement. When the government filed that sentencing memorandum slash opposition to the PSR, it argued, you know, it essentially submitted photos, but it also cited the PSR's armed enforcement allegation in support of the, in its memorandum, and which ultimately resulted in the PSR's being amended to include the four-point enhancement. So there was that language in its opposition to the PSR, which ultimately was relied on by the district court. But my impression is somewhat the same as Judge Lopez's. And the fact of the matter is, I think you would find fairly broad agreement that the probation allegation in and of itself, all right, isn't proof of anything. But we're on clear error review, and the question to me is whether the evidence in the record, taken as a whole, supports a plausible rendition of the matter that supports the district court's imposition of the four-level enhancement. And so you've got to deal with evidence like the so-called photo of the cast in the hand with the drugs, evidence of the cash, the defendant's prior conviction for drug trafficking, and in my mind, significantly, the question of how this case is distinguishable in any material way from our earlier precedent in canon. Judge Selye, before you get to that question, if you don't mind, I just want, before we turn to that subject, which I do want you to address, I just want to wind up on the point about your argument with respect to whether the armed enforcer finding played any role in the four-point enhancement. I was left a little bit unclear as to whether you were arguing that it did, and if it did, how it did. Because I take it your argument is that there's no way to read evidence as compelling the conclusion that the evidence independently showed the connection between the drugs and the gun. And so if the district court was improperly influenced in making the finding of that connection based on the armed enforcer finding, that would justify vacating the sentence. I took that to be your argument. But I wasn't sure after you concluded answering questions for Judge Selye and Judge Lopez what your argument was as to how the armed enforcer finding influenced the finding about the four-point enhancement. So could you just explain that to me? Yes, your honor, that's exactly right. Your understanding of the appellant's argument is correct in the sense that once that bell was rung... Yeah, I know what his argument is, but I'm asking you to just address the point which I'm still not clear on. In what way does the record show that the armed enforcer finding influenced the district court's finding on the four-point enhancement? Well, your honor, I think the record may not be explicitly clear, but at least implicitly it shows it's discussed immediately prior to a rendering sentence. The district court again reiterates despite being on probation, he was an armed enforcer at this public housing project. So it infected the sentence at both before the court's decision. I'm trying to isolate on that. You're saying it affected this sentence, but your challenge is to the application of the four-point enhancement. I don't understand you making a freestanding challenge to the sentence based on the reliance on the armed enforcer finding. You seem to be arguing that the four-point enhancement was wrong because it was based on the armed enforcer finding. And I'm not clear on how you're making that connection. What shows that the four-point enhancement itself was imposed in part because he thought he was an armed enforcer rather than based on independent evidence unrelated to that finding? Well, your honor, the district court's decision as to whether or not to apply the four-point enhancement, this is all happening before the sentencing hearing. So when defense counsel objects to the armed enforcer allegation and then the government goes ahead and submits their sentencing memorandum in support of a four-point enhancement, that was all decided after. So it essentially had to be part of the district court's calculus when it decided whether or not to impose the four-point enhancement, which it ultimately did. Okay, and then last point, just so I'm clear, I take it if he was an armed enforcer, the argument for applying the enhancement would be very strong, correct? That's right, but and that's essentially the argument that's stripped away. So the implicit point you're making is, well, if he really thought he was an armed enhancer, an armed enforcer, there's just no way he wouldn't have applied the enhancement. So since he says that he was an armed enforcer, it stands to reason it must have played some role in the application of the enhancement. That's the idea. Exactly right, particularly given the the weak evidence that we have absent these allegations. Okay, and so now bring me... to take you down that road, but can you now go back to Judge Selye's question about what the evidence, independent of the armed enforcer finding, shows with respect to the connection between the drugs and the gun? Yes, your honor, and to address that question, I think canon is instructive in the sense that that was a decision that the court rendered in 2009, and after that in 2014, the sentencing guidelines published an application note, 14E, which instructs that the threshold question a district court must answer when applying these possession of firearm in connection with another felony offense is whether or not that other felony offense, in this case drug trafficking, was relevant conduct. Was it part of the same course of conduct or common scheme or plan? And the guidelines to the relevant... the application note to the relevant conduct guideline points courts to assessing whether or not the offenses were similar, the regularity or repetition of the offenses, and the time interval between them. Now, as to repetition in a time interval, we don't have that because the district... because the government submitted photos from cell phones that were seized during Mr. Carrion's arrest that don't have any information as to when the pictures were taken, how they were obtained. Counsel, you said Mr. Cannon's arrest, you mean Mr. Carrion's arrest, right? I'm sorry, Mr. Carrion's arrest, yes, and so we don't know. There was another person who was arrested with him that day. You want to... if I just may finish? Yeah, yeah, go ahead. There was another individual that was... that was arrested that day. We don't know whether the phone... whether... whose phones they were. There was never... Mr. Carrion never stipulated or conceded that that they were his phones, and so essentially what this amounts to is... it shouldn't be an unceremonious task to add 30 to 37 months to someone's guideline sentence, and with these pictures, we just simply don't know. There's no... You're over time, but I do want you to just address the question Judge Selye asked you that you didn't have a chance to get to, which is how you would distinguish this even drugs that are arguably just for personal use can, in context, supply the basis for a finding of a connection between the drugs and the gun? How is... how are those cases distinguishable from the facts here? I think this case, we have documented history that Mr. Carrion was a long-time marijuana user. He actually tested positive. It's in the PSR. He tested positive to marijuana use. The four plastic containers of marijuana are consistent with a personal usage of marijuana, and in canon, the defendant disclaimed knowledge of drugs or an intent to distribute, whereas in this case, Mr. Carrion did have a prior for drug distribution, but he never disclaimed that this was nothing other than personal possession, and I think that that's something that the court could have reasonably found below, but didn't. They found drug... the court found drug trafficking, which this record should not support with... does not support with the small amount of marijuana that was recovered. Counsel, I just want to... I don't understand your argument with respect to the photographs in this sense. I mean, I do understand your position that there's no dating of those photographs. It's hard to know when the defendant was engaged in that activity, but I don't understand if there's any argument that he... he is in those photographs, and those photographs show him armed. He's involved in packing up drugs, and so if that's what he was doing on those occasions, why isn't it a fair inference that on this occasion, where there... he is in the presence of drugs, he is armed, why isn't it a fair inference that as on those prior occasions, he once again was involved, even though the amount of drugs is quite small, that he is engaged in the distribution, that he's engaged in drug trafficking? Why is not that a fair inference for those... Yes, yes, yes, your honor. I think what's... what's fatal, the linchpin here should be the temporal connection. Is this relevant conduct? We don't have any to find out when a picture was taken. In other cases with photos, we have more context. I think United States v. Blackmun, it was a two-day gap between when a defendant had the firearm and then when he was supposedly engaged in drug trafficking, and that court said, hey, that was too... that was too attenuated, and it was 100 miles away. So without the information as to when and where, that's where I think it's not a fair inference. That's the position of the appellant, is that there needs to be somewhere to fill in that gap, and the loose inferences that was... that the court took into consideration in Cannon and in Matthews, which is another case the government cites, pre-application note, doesn't... I mean, it's... there's a lack of specificity and particularity to the conduct, and there needs to be that link in order to link the firearms possessed in this case to the drugs or the drug trafficking activity. So with that, it could have been five weeks before, it could have been five years before, and to Your Honor's point about the pictures, Mr. Carrion never conceded that they were him, but if you actually look at the photos, we see a much younger individual than the 28-year-old Carrion that was arrested. And also, Your Honor, one last point, if I may, he was arrested with someone else, and the government proffered a video that a multi-defendant case... there was an indictment in a multi-defendant case from that very same housing project where he lived. Mr. Carrion was never charged in that multi-defendant case, so the government had probable cause to indict multiple people from the housing project, but they didn't indict Mr. Carrion. And so, presumably, they're trying to ask the court now to say that there was a preponderance of the evidence to support that he was an armed enforcer when there wasn't probable cause to do so in that... in that case. Thank you. Bill, go ahead, Judge Talia. No, I was just curious, did any witness identify Carrion as being in the photographs? Your Honor, the government did not bring any witness, no. Okay, thank you. Thank you, Your Honor. Thank you, Attorney Carrion. At this time, if you could please mute your audio and video. Attorney Conner, if you could unmute your audio and video and introduce yourself on the record to begin your oral argument. Attorney Conner, are you in the meeting? I am, Dan. Can you see me? I can't see you, but I can hear you. If you want... there you go. If you want to proceed, go ahead. Okay, go ahead. Good morning, Your Honors. May it please the court, Greg Conner on behalf of the United States. This court should affirm Carrion's sentence because under the Cannon and Reyes-Torres decisions, the record in this case supports the District Court's conclusion that Carrion had a gun in connection with drug trafficking. Additionally, the record also supports the finding that the District Court made later in the hearing that Carrion acted as an armed enforcer for the drug organization in his housing project. Starting with the enhancement, Carrion was arrested with $2,177 as well as several firearms and marijuana separated out into four containers. Under a straightforward application of the Cannon and Reyes-Torres decisions, that is sufficient to support the determination that this enhancement should apply. In Cannon, this court said that large amounts of cash, despite the defendant being unemployed, supports the inference that even a small amount of drugs was intended for sale rather than personal use. And contrary to Carrion's position and argument today, yes, this was a small amount of marijuana, but it was separated out into four plastic containers, which again we believe is consistent with the inference that the District Court made that the large amounts of cash, the drugs, and the guns all indicated that he was engaged in drug trafficking. Is there anything in the record that would support the statement you just made that the separation of the marijuana into four individual containers is consistent with commercial use as opposed to personal use of the marijuana? I don't know much about marijuana packaging, but my impression, at least from the record, is that these were four doses, if that's the right word and it probably isn't, of marijuana that were consistent with personal use. And I don't know why you say that the most logical inference is that they were consistent with commercial use. Well, again, it's all in the context of everything that Carrion had with him when he was arrested. There was no specific evidence about the quantities of marijuana being consistent with commercial use? No. Nothing peculiar about the way they were packaged or about the size of the quantities, anything of that sort? I'm both referring to the District Court's reasoning at page 100 of the appendix. Yeah, but I'm asking you about evidence, all right? Is there any evidence that suggests that either the quantities or the method of packaging or something else idiosyncratic, individualistic about these four small containers of marijuana were consistent with commercial as opposed to personal use? I'm drawing on the common sense conclusion that there's no reason for an individual for personal use to separate out small amounts of marijuana into plastic containers. There's no benefit to a person consuming marijuana to do that, and that's coupled with the District Court's conclusion. Is there evidence that he separated them out? No. So, to correct my characterization, the marijuana was separated out, and in the context of... And there be a reason for it to be separated out that would be consistent with personal use, which was that it was given to him in that form? That's possible, but the combination of that, the large amounts of cash, and this is the same argument that the defendants made in Cannon and in Reyes-Torres. In those cases, wasn't there prior evidence of drug trafficking? Is there here? Yes, there is, Your Honor. And that is another way that this case is analogous to both Cannon and Reyes-Torres. There were separate reasons that this court said the defendant was, quote, stranger to the drug trade. And both of those separate reasons, the prior conviction in Cannon and the photographs in Reyes-Torres, both were reasons this court pointed to to say that there was prior evidence of drug trafficking. What is there here that's equivalent? The equivalent is that, similar to the Cannon case, he had a conviction for drug trafficking in the same housing project, large amounts of cocaine and marijuana. How much prior in time? What was the underlying conduct in the conviction occurred when? This is at pages eight to nine of the sealed appendix. Five minutes remaining. And the information we have from the record is that he was convicted of possession with intent to distribute. And the exact amount is thousands of packages. Not the exact amount, the exact time. In what year did the conduct that led to the earlier indictment and conviction occur? In 2010, Your Honor. Okay. And so that's approximately what? Seven, eight, nine years before this incident? Yes, Your Honor. Okay. So the inference is that if you engaged in drug trafficking seven or eight years ago, you probably still do. Is that the inference? It's only a part of the district court's, of the reasoning that this court has approved of in the past. So it starts with the tip. Let me ask you, let me ask you this way. Suppose he had been found just with the guns and the cash. Would your argument be the same? Uh, no, because... Okay, so then the key thing is the four individual packages of marijuana. That's what you think makes it fair to make the linkage, correct? Yes, and also... But the trafficking offense from eight to ten years ago was for cocaine, not marijuana, correct? No, Your Honor. It was for both cocaine and marijuana. The earlier conviction was? That's correct, Your Honor. Counsel, don't you think you make the argument, I don't, the district court, I think, acknowledges that I understood you to argue that in Puerto Rico, possession of this amount of marijuana was also a felony. At least that's, you seem to make that argument, or you make that point in your brief. Is that correct? I believe we only described what the trial AUSA pointed out, and this is in passing because the trial AUSA mentions that possession is a felony, simple possession, but the... That it's a felony, yes, but the primary position of the government is that this was connected with drug trafficking, and that is the reasoning pointing mostly to the cash. That is the reasoning that the district court used at page 100 of the appendix. Counsel, let me ask you about, I'm a little confused on how you are arguing the relationship between the armed enforcer report in the Puerto Rico probation report and the judge's decision to apply that enhancement. In your briefing, it seemed to me you were trying to suggest that when the district court made that enhancement determination, it was not relying upon that armed enforcer report from the probation department. Now you seem to be saying that the district court did consider that in applying the enhancement, and that it was entirely proper for it to do so. What exactly are you saying in terms of the relationship between that report, that he was an armed enforcer of the housing project, and the decision to apply the enhancement? What is your argument in the relationship between the two? Okay, yeah, I do want to correct the characterization of our argument, because that's not what we're saying. We think that the district court made its guideline calculation specifically about the enhancement at page 101 of the appendix, and that it's not until 14 pages later, during the weighing of the 3553A factors, that the district court mentions the armed enforcer characterization. So you're correct that our briefing, being responsive to to disabuse this court of any concerns about the mere allegation language, this comes out a little bit in Carrion's 28J letters. I'm happy to address why that that finding is also supported by the record, but no, our position is not that the enhancement was based on that finding, and in fact that's... Excuse me, what finding are you talking about? The district court seems to adopt the finding during the 3553A factors. No, no, there's no finding to adopt. There's a charge by probation. There's no finding. There's no evidence that some court actually found that charge to be so. Okay, I agree with that, and I guess my point is just that the district court's mere repetition of that is not problematic, as it has been in some of the cases that Carrion references, because it is supported by the record. Again, I don't think that... Counsel, if the... Perhaps this is not the argument that's being made by the defendant, but if the district court specifically refers to a sentencing factor that it should not have, this allegation that he was an armed enforcer, and we conclude that that was not an appropriate sentencing factor, should we send it back with instructions that that was not appropriate to considering only factors that are appropriate? Why shouldn't we do that? For two reasons, Judge Lopez. The first is you're correct that that is not Carrion's argument. They do not challenge the section of the hearing where the district court weighs the sentencing factors in 3553A, so we are getting outside of the appeal as presented by the parties in the briefing. Moreover, the district court was not improperly relying on an unsubstantiated allegation because the idea that he was armed is undisputed. The idea that he was drug trafficking, we think the record evidence supports, so the only third of that allegation that he was acting as an on the move with guns, with drugs, and in one aspect with other individuals that were charged as a part of a drug trafficking conspiracy. All of this shows that he was carrying firearms, carrying drugs for this drug organization, but again, we are outside of the briefing at this point, and we don't think we have to win on that issue for this court to inform the sentence. Let me just ask you this. What concerns me is certainly when a district court makes clear that independent of some factor, it would come to the same sentence. There's no reason to remand a sentence to the district court, even if it then improperly also was influenced by something, because we know the district court would have come to the conclusion independently. I guess my under the impression that he was an armed enforcer based on that charge alone. It would be hard to see how you would not apply the four-point enhancement, and so the concern is that on a pretty thin record, maybe it's sufficient, but it's certainly not a record that compels the conclusion about a connection between drug trafficking and the guns. The fact that we know the district court in the back of his mind was under the view that this some weight, concern for me is that that would just color the way it would look at that evidence, which I take it to be what the defendant's contention is, so one way to clarify that would be to vacate and remand the sentence to inform the district court it can't consider that fact and have to make the finding based on just the facts without that coloration. What would be wrong with doing that? Two things, Your Honor. One, again, we really don't think that, and I know that you're suggesting it was always in the back of the district court's mind when it was deciding on the enhancement, but we think the record indicates that the district court gave its reasoning and it's specific to what Carrion was found with when he was arrested, and that's at page 100 of the appendix. There is more evidence and more argument by the parties in the 14 pages in between the district court's decision on the enhancement and the later finding or reference to this allegation, so we don't think that the later discussion of this armed enforcer language was the reason that the district court imposed the enhancement, and, indeed, the district court specifically references other evidence, namely what he was arrested with. Counsel, if I might, I know you're over time, but it would be helpful for me to get a clarification on the video that is shown at the sentencing hearing. I have the impression that video showed a number of individuals at the housing project who were armed, and they are armed in relationship to some kind of drug, perhaps trafficking activity that's taking place at the housing project, and that the contention is that Mr. Carrion is seen in that video engaging in that activity. Is that correct? It's the number one and number three defendants in the drug trafficking case that the trial AUSA referenced. They both have guns out in the open, whereas Carrion only has the bag that he's arrested with, so we think this supports the, this again with the remainder of the record evidence, supports the inference that he was likely carrying firearms just like he was five later when he was arrested with the same bag. There was something like 10 magazines inside, so that surveillance video, again, we think is cumulative of all the other evidence that suggests it was just so the government's argument is that even though he's not armed in that video, that you're suggesting that that shows him acting as an armed enforcer at the housing authority, and in that sense what the video shows is consistent with the allegation in the Puerto Rico probation report that he has acted as an armed enforcer. Is that why that video was so important? Because it provided some evidence to support the allegation in the Puerto Rico but we also think that the remainder of the evidence, for example, the tip that prompted the investigation that said Carrion was on probation, that he was armed, that he was going back and forth between the housing project and the gas station, that again, the photo evidence, all of the record evidence, the prior conviction supports both the language and the earlier But go back to the video. The video simply shows Carrion standing holding a bag. We have no inkling as to what's in the bag except for your supposition that the bag probably had firearms in it. That's right, but respectfully, your honor, I don't understand how that shows his culpability as an armed enforcer particularly. It doesn't show him armed. It doesn't show him enforcing anything. In the canon decision by this court, this court said that district courts are not required to ignore the logical relationship between drugs, guns, and cash. Where's the gun in the video? It's our position that the gun found the several guns and several magazines found just five days later in the same bag in close proximity to cash and drugs supports the inference that when he was walking around with these two individuals, he was doing so in a similar capacity to the way they were walking around with arms to protect the drug points. Again, I have to argue that this is outside of the briefing but that the district court was not reversibly wrong to reference that language. Why is it outside the briefing? The defendant bitterly attacks the use of the photographic evidence as showing nothing of consequence. I mean, that's central to the defendant's argument on this four-level enhancement. The photographic evidence doesn't prove a thing. Okay, well, a few points. First, this was a pre-pandemic sentencing hearing so Carrion is in the courtroom. He is in the arrest photo. He is in the photos from the cell phone extraction and he's in the video so the district court can consider all of that evidence and determine that yes, this is indicative of this. This all does support drug trafficking and as far as whether this is outside of the briefing. No, this is what's bothering me. If I'm understanding you, the video was put forward to prove out the armed enforcer allegation, correct? No, we disagree with that characterization. We think the photo and the video evidence was meant to request a high guideline sentence to show that Carrion is walking around. The narration in the presentation of the video was an argument made that this showed him to be an armed enforcer? Not in, I don't believe in the video narration. I think it just described him as walking around with other individuals with children nearby in the middle of the day that were engaged in drug trafficking. Well, the video certainly had an effect on the judge with respect to this armed enforcer issue. I mean, the judge is actually quite exercised by what he has just seen and he, particularly because the defendant was on probation at the time, he was engaged in this activity and he says that he is not reflecting proper Christian values when he is engaged in this activity. I mean, he treats it, I believe, as supporting the characterization that the defendant was an armed enforcer. That's what he sees on the video and he then, that determination plays a prominent role in the sentencing decision that he makes. Isn't that true? It is, and Carrion does not challenge that portion of the sentencing proceedings. He does not court-weight the sentencing factors. It is merely an attack on the guideline calculation and as we've discussed, we think the Cannon and Reyes-Torres decision supports the enhancement. And if there are no further questions, I'll rely on my brief. Thank you. Thank you, Attorney Conner. At this time, you can mute your audio and video. Attorney Carrion, if you will reintroduce yourself for the record, there's a two-minute rebuttal reserved for you. Yes, thank you again, Your Honor. Samuel Carrion for the appellant Alejandro Carrion Melendez. I just want to respond briefly. What makes this case distinguishable from Cannon? Well, Cannon had crack cocaine and marijuana. Here, we just had the marijuana and we also have evidence that Mr. Carrion was a... Well, why is that significant if the prior conviction was for both cocaine and marijuana? Well, in Cannon, his prior conviction was for a cocaine distribution. In this case, we have on one hand, excuse me, on one hand, him being a marijuana user and on the other hand, a small amount of marijuana consistent with personal use. No, I understand that, but you also do have a prior conviction for marijuana trafficking, don't you? We do have a prior conviction, which as Judge Celia pointed out, that it was eight or nine years prior to the incident offense. Okay, but that, I mean, that may be just because of the timing, but in fact, there is a prior conviction for trafficking of the drug that he's in possession of with the cash and the guns. That's right, Your Honor, but in Cannon, there was no allegation or there was nothing in the record that Cannon was a crack cocaine user. And so, in this case, we actually have something consistent with his personal use. And just to move on to the cash, the government would have the cash do a lot of heavy lifting in this case and perhaps more heavy lifting than it's capable of. Yes, while cash may be indicative of drug trafficking, there's plenty of reasons, both illegal and legal, why someone would have $2,000 worth of cash. Before you use up all your time, can you just circle back and, I mean, you just heard archaically with your opponent about the armed enforcer. Charge and what role it did or didn't play in what, say, the four-level enhancement. And I guess the two arguments that I've heard from the government, if you could just address each, is one, it played no role. And then two, I guess it's an argument that it's kind of a, the label armed enforcer that was put forward in the probation charge is sort of a relevancy because the evidence independently showed plausibly that he was an armed enforcer. So, if you could just address each of those points and how this armed enforcer charge can be said to have not only influenced the district court in the 3553 factors, but influenced the district court in the finding on the four-level enhancement. Yes, your honor. Well, I think the government conflates what happened here by focusing on just what happened at sentencing. But again, prior to sentencing, there was the objection by the government, there was objection by defense to the PSR, there was objection by the government to the PSR in favor of the four-point enhancement being added. Then the district court decides that the armed enforcer allegation should be sustained and also sustains the four-point enhancement. So, this was all taken into the district court's calculus ultimately when it decided to sustain. Now, everything that happened at sentencing was to create a record, but those decisions had already been made. And moving on to the video, just to note that the government mentioned that they were going to bring a witness to provide some much-needed context to the video, but eventually they just never did. And so, what you had was just a video of him talking to people in a housing project where he grew up his whole life who happened to be armed. And again, this happens right before the district court passes sentence. And one last thing about the court's decision in Castillo-Torres, where in that case, it was a guideline sentence that the court rendered, but even so, this court found that the reliance on unsupported allegations in a police complaint could have affected the sentence and could have, in fact, affected the sentence in the sense that the court might have sentenced the defendant in that case to a sentence below the guideline range. So, in this case, we have a sentence of 90 months, which is a little bit above the lower end of the guideline range, but in the context of these armed enforcer allegations, it's very hard to parse out that they had no influence on the district court whatsoever when the enhancement was based on drug trafficking, not drug possession. Thank you. Isn't the government right that your request for resentencing is based entirely upon the way in and not the way in which it conducted the 3553 analysis at the end? That is certainly the impression that I get from your argument. You don't say anything, as I recall, about the way in which the judge conducted the 3553 analysis. Isn't that correct? Your Honor, that's correct, but it's also the position of the appellant that there's no way to extricate the armed enforcer allegation from the four-point enhancement, particularly with the pre-sentencing hearing motion practice in regards to whether or not this was an appropriate enhancement. And just to close the loop, I gather it's your argument that given the importance of the armed enforcer enhancement to the way in which the judge conducted the 3553 analysis, it's appropriate to when he did that four-point enhancement analysis. I gather that's your argument. Yes, Your Honor. With the record that we have, we have no way of knowing that this error or this reliance on these allegations, these hearsay uncorroborated allegations, did not in some way affect or infect the sentencing court's decision related to the propriety of the four-point enhancement, particularly if they were excised, what we have left in the record. Okay. So if there's nothing further, Your Honor, I would ask to just rest. Thank you. Thank you. That concludes argument in this matter. At this time, Attorney Kerrion and Attorney Connor can disconnect from the meeting.